Matter of Quoma v Bob's Discount Furniture (2025 NY Slip Op 03610)

Matter of Quoma v Bob's Discount Furniture

2025 NY Slip Op 03610

Decided on June 12, 2025

Appellate Division, Third Department

Garry, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 12, 2025

CV-23-2217

[*1]In the Matter of the Claim of Joseph Quoma, Appellant,
v
Bob's Discount Furniture et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:April 22, 2025

Before: Garry, P.J., Clark, Pritzker, McShan and Powers, JJ.

Grey & Grey, LLP, Farmingdale (Robert E. Grey of counsel), for appellant.
Stewart, Greenblatt, Manning & Baez, Syosset (Jonathan R. Baez of counsel), for Bob's Discount Furniture and another, respondents.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for Workers' Compensation Board, respondent.

Garry, P.J.
Appeals (1) from a decision of the Workers' Compensation Board, filed November 17, 2023, which, among other things, found that the employer's workers' compensation carrier was entitled, pursuant to Workers' Compensation Law § 15 (3) (w), to take a credit toward awards of temporary disability, and (2) from an amended decision of said Board, filed August 7, 2024, which, among other things, corrected certain errors in its prior decision.
On December 19, 2017, claimant was involved in a work-related accident, and his subsequent claim for workers' compensation benefits was established for injuries to his back, thoracic spine and both shoulders. Awards were made at various rates for periods of temporary disability and lost time beginning on December 20, 2017. In April 2021, claimant's treating pain management specialist opined that claimant had reached maximum medical improvement (hereinafter MMI) with respect to his lumbar spine, and, in November 2021, the carrier's consultant in physical medicine and rehabilitation, who conducted an independent medical examination of claimant, found that MMI in the field of physical medicine and rehabilitation had been established. In a June 2022 decision, a Workers' Compensation Law Judge (hereinafter WCLJ) directed the parties to produce medical evidence of permanency. Following subsequent examinations for permanency, as well as deposition testimony from several of the physicians who examined claimant for permanency and testimony from claimant, the WCLJ, in a November 2022 decision, classified claimant as having a permanent partial disability with a loss of wage-earning capacity of 65%, entitling him to 375 weeks of compensation at the specified rate. The WCLJ also found that, pursuant to Workers' Compensation Law § 15 (3) (w), the employer's workers' compensation carrier was entitled to a credit against the number of statutory cap weeks based upon its payment of 78.8 weeks of awards to claimant for periods of temporary partial disability after June 16, 2020 — the 130th week following the accident of record.
The Workers' Compensation Board affirmed in a November 2023 decision, rejecting claimant's argument that the so-called safety valve provision of Workers' Compensation Law § 15 (3) (w) was satisfied so as to preclude the carrier from taking a credit against the number of statutory cap weeks. In an August 2024 superseding amended decision, the Board expressly clarified its policy regarding findings as to whether a claimant is at MMI for purposes of determining entitlement to safety valve relief. Under that clarified policy, a claimant would no longer need to request a hearing at the 130-week mark in order to preserve his or her ability to invoke the safety valve provision. The Board declared that, instead, if the issue is not raised until permanency is ripe, it will look back and analyze the evidence in the record around the 130th week to make a finding as to whether the claimant was or was not at MMI at that time[*2]. Upon undertaking this query, the Board determined that there was insufficient evidence in the record to support a determination that claimant had not reached MMI as of June 16, 2020, and, therefore, all four statutory requirements of the safety valve provision were not satisfied and the provision did not apply to deprive the carrier of a credit for 78.8 weeks. Claimant appeals from the decision and the amended decision, arguing that the Board's interpretation and application of Workers' Compensation Law § 15 (3) (w) was incorrect in several respects.[FN1]
As part of the 2017 Workers' Compensation Reform Act, Workers' Compensation Law § 15 (3) (w) was amended, effective April 10, 2017 (L 2017, ch 59, § 1, part NNN, § 1, subpart A, § 1), to provide a credit to the employer or carrier against the maximum benefits payable for a permanent partial disability for any temporary disability payments made to a claimant for periods extending beyond 130 weeks (2.5 years) from the date of accident or disablement (see Workers' Compensation Law § 15 [3] [w]; Workers' Comp Bd Release Subject No. 046-936, 2017 Workers' Compensation Reform [Apr. 25, 2017]; see generally Matter of Scott v Visiting Nurses Home Care, 172 AD3d 1868, 1869-1870 [3d Dept 2019], lv dismissed 34 NY3d 1011 [2019]).[FN2] That amendment also created a safety valve provision, preventing the implementation of such a credit, for claimants that have not in fact reached MMI at the 130-week mark (see Workers' Compensation Law § 15 [3] [w]; Workers' Comp Bd Release Subject No. 046-936, 2017 Workers' Compensation Reform [Apr. 25, 2017]). Pursuant to the statute, four requirements must be met in order for the safety valve provision in Workers' Compensation Law § 15 (3) (w) to apply: (1) "permanency is at issue," (2) "claimant has submitted medical evidence that he or she is not at [MMI]," (3) "the [employer or] carrier has produced or has had a reasonable opportunity to produce an independent medical examination concerning [MMI]," and (4) "the [B]oard has determined that the claimant is not yet at [MMI]" (Workers' Compensation Law § 15 [3] [w]).
We first reject claimant's contention that the carrier's credit may not begin until the carrier has actually paid 130 weeks of temporary partial disability benefits, regardless of when that occurs. The clear and unambiguous language of Workers' Compensation Law § 15 (3) (w) states that the carrier is entitled to a credit against the amount of maximum benefit weeks "where the carrier or employer has provided compensation . . . beyond [130] weeks from the date of accident or disablement" (Workers' Compensation Law § 15 [3] [w] [emphasis added]). By its plain terms, this provision does not require that a claimant first be paid 130 weeks of temporary disability benefits before the carrier can obtain a credit; rather, the credit applies to temporary disability compensation paid for periods after or "beyond [130] weeks from the date of the accident or disablement" (Workers' [*3]Compensation Law § 15 [3] [w]). As there is no entitlement to 130 weeks of temporary disability benefits, it is inconsequential that a claimant, as the one here, received less than 130 weeks of total temporary benefits for the first 130 weeks following the accident of record. This interpretation is also consistent with the Board's view of the statute around the time of its enactment — that the application of the credit "is strictly a time measurement from the date of accident, and whether benefits were paid during such 130 weeks is not determinative of the calculation" (Letter from David F. Wertheim, Workers' Compensation Board General Counsel, May 23, 2017, Bill Jacket, L 2017, ch 59 at 28; see generally Workers' Comp Bd Release Subject No. 046-548, Chair Announces Efforts to Promote Permanency Classifications [May 28, 2013] [recognizing that the permanency classification process continued to be "plagued by non-compliance and bad faith delays," stalling the imposition of durational caps and thus undermining prior legislative reforms to that end]).
We are persuaded, however, by claimant's further arguments regarding the Board's interpretation of the safety valve requirements. As noted above, the express purpose of the Board's amended decision was to clarify its policy regarding a finding that a claimant is not at MMI for purposes of determining entitlement to safety valve relief. In doing so, the Board first made clear that a claimant is no longer required to request such relief at the 130-week mark in order to invoke the safety valve provision once permanency is ripe. This new policy of retroactive analysis, which is notably in alignment with the Board's original position at the time of the 2017 enactment (see Letter from David F. Wertheim, Workers' Compensation Board General Counsel, May 23, 2017, Bill Jacket, L 2017, ch 59 at 28), renders the first aspect of claimant's challenge to the Board's interpretation of the safety valve requirements moot.
The Board went on to state that, in looking back, it will consider whether a form C-4.3 report was received around the 130-week mark and "will review the report to make a finding regarding whether the claimant was or was not at MMI at that time." The Board then solely considered whether claimant had filed a C-4.3 as of June 16, 2020. No such form had been filed, but there is ample evidence in the administrative record concerning claimant's preauthorized causally-related surgery to his right shoulder on June 24, 2020. The Board has routinely held that, although "[t]he mere assertion of the possibility of future surgery is not a bar to MMI," a finding of MMI is not appropriate where a claimant both "qualif[ies] for surgery" and has "specific plans for surgery, including an active request for preauthorization, if required" (Workers' Comp Bd Release Subject No. 046-548, Chair Announces Efforts to Promote Permanency Classifications [May 28, 2013]; see e.g. Employer: King Kullen Grocery Co., 2025 WL 504043[*4], *2, 2025 NY Wrk Comp LEXIS 764, *5-6 [WCB No. G247 4595, Feb. 5, 2025]; Employer: Clove Lakes Health Care & Rehab, 2023 WL 8702459, *2, 2023 NY Wrk Comp LEXIS 7798, *5-6 [WCB No. G296 6409, Dec. 11, 2023]; Employer: Unitex Textile Servs. LLC, 2023 WL 2247475, *6 [WCB Nos. G179 3958, G082 4057, Feb. 21, 2023]; see generally Workers' Compensation Guidelines for Determining Impairment §§ 1.2, 5.2 at 6, 29 [2018]). The Board's silence as to the foregoing medical evidence in the record coupled with its emphasis on the lack of a specific form not required by statute, regulation, guideline, subject number or otherwise, leads us to conclude that the Board impermissibly imposed a novel administrative burden on this claimant well after the time in which he could have satisfied same. Because the Board failed to make any clear findings as to the other safety valve factors, we must reverse and remit for a new determination based upon the record evidence.
Clark, Pritzker, McShan and Powers, JJ., concur.
ORDERED that the appeal from the decision is dismissed, as moot, without costs.
ORDERED that the amended decision is modified, without costs, by reversing so much thereof as held that the safety valve provision of Workers' Compensation Law § 15 (3) (w) does not apply; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The Board's amended decision expressly states that it supersedes the prior decision, and the appeal from the initial decision therefore must be dismissed as moot (see Matter of Capers v Jacobi Med. Ctr., 235 AD3d 1052, 1053 n [3d Dept 2025]; Matter of McCrea v City of Buffalo, 209 AD3d 1253, 1253-1254 [3d Dept 2022]).
Footnote 2: A carrier may seek this credit only in claims where the date of accident or disablement occurs on or after April 10, 2017 (see Workers' Compensation Law § 15 [3] [w]; Workers' Comp Bd Release Subject No. 046-936, 2017 Workers' Compensation Reform [Apr. 25, 2017]).